IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND, *et al.*, <br> *Plaintiffs,* <br><br> v. <br><br> MCCORMICK PAINTING COMPANY, INC., *et al.*, <br> *Defendants.* | Civil No. ELH-24-2621 |

**MEMORANDUM OPINION**

This case arises under the Employee Income Security Act of 1974 ("ERISA"), codified as amended at 29 U.S.C. §§ 1001 *et seq.* On September 10, 2024, plaintiffs International Painters and Allied Trades Industry Pension Fund ("Pension Fund" or "IUPAT Pension Fund"); International Painters and Allied Trades Annuity Plan ("Annuity Plan" or "IUPAT Annuity Plan"); Daniel Williams, Trustee of the Pension Fund and the Annuity Plan; Finishing Trades Institute ("FTI")[1]; Finishing Trades Institute of the International Painters and Allied Trades District Council 10 ("FTI Council 10"); and Southern Painters Welfare Fund ("Welfare Fund") and its trustees, Paul Canning and Bruce Wohl, filed suit against McCormick Painting Company, Inc. ("McCormick Painting") and McCormick Industrial Abatement Services, Inc. ("McCormick Abatement") (collectively, the "Companies"). *See* ECF 1 (the "Complaint").

I shall refer to Southern Painters Welfare Fund and Finishing Trades Institute of the International Painters and Allied Trades District Council 10 collectively as the "SP Plaintiffs." I

---

[1] Plaintiffs indicate in the case caption that FTI was formerly known as "International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund."

will refer to International Painters and Allied Trades Industry Pension Fund, International Painters and Allied Trades Annuity Plan, and the Finishing Trades Institute collectively as the "IUPAT Plaintiffs."[2]

The Companies, which are both Arkansas corporations, are employers within the meaning of ERISA § 3(5), 29 U.S.C. § 1002(5), and the National Labor Relations Act ("NLRA") § 2(2), 29 U.S.C. § 152(2).  *See* ECF 1, ¶¶ 10, 11.  They employ members of one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades (the "Union" or "IUPAT").  *See id.* ¶ 18.  Plaintiffs assert that Williams is a fiduciary of the Pension Fund and the Annuity Plan under 29 U.S.C. § 1002(21).  *Id.* ¶ 4.  Similarly, they allege that Canning and Wohl are fiduciaries of the Welfare Fund.  *Id.* ¶ 8.

Plaintiffs use the term "Bargained Entities" in the Complaint.  *See* ECF 1, ¶ 20.  But, they do not define the term.  However, plaintiffs define the "SP Bargained Entities" as the International Union of Painters and Allied Trades Local Union 49 and Local Union 424.  *Id.* ¶ 7.  And, they define the "IUPAT Bargained Entities" to include the Political Action Together Legislative and Educational Committee and the Political Action Together Political Committee (collectively, "PAT Fund") and the Labor Management Cooperation Initiative ("LCMI").  *Id.* ¶ 3.  According to plaintiffs, the PAT Fund "is an unincorporated association or fund" established by the Union, pursuant to 52 U.S.C. § 30101 *et seq.*, "for the purpose of advancing the political interests of its members by lawfully influencing the selection, nomination, election and/or appointment of individuals for political office."  *Id*.  And, they describe the LCMI as "a joint labor and

---

[2] There are many entities mentioned in the filings, and not all are parties to the case. Moreover, plaintiffs and defendants sometimes use varying abbreviations in their submissions when referring to the same entities.  Because of the "Alphabet Soup" of abbreviations and acronyms in this Memorandum Opinion, I have included a glossary of abbreviations, for the convenience of the reader, set forth in Appendix A.

management initiative and [] an unincorporated organization established under 29 U.S.C. §186(c)(9) for one or more of the purposes set forth in section 5(b) of the Labor Management Cooperation Act of 1978." *Id.*

Plaintiffs define the "IUPAT Funds" to include the IUPAT Plaintiffs, the IUPAT Bargained Entities, and Williams. *Id.* ¶ 4. They define the "SP Funds" to include Canning, Wohl, and the SP Plaintiffs. *Id.* ¶ 8. "Funds" refers to a combination of both the IUPAT Funds and the SP Funds. *Id.* ¶ 9.

According to plaintiffs, the Funds, the Pension Plan, and the Annuity Plan are all "employee benefit plans" within the meaning of ERISA. *See id.* ¶¶ 1, 2, 5, 6. In particular, plaintiffs claim that defendants failed to meet their obligations under certain labor agreements to make contributions to the IUPAT Plaintiffs, the SP Plaintiffs, the "Bargained Entities," and the Union, based on hours worked by defendants' employees. *Id.* ¶ 20. They seek to recover a sum of at least $326,364.28 in unpaid contributions to the IUPAT Funds and the SP Funds; any additional amounts that become due and owing during the pendency of this litigation; liquidated damages; interest; costs associated with this action, including attorney's fees; and they also seek audits of the defendants' records. ECF 1 at 9.

Plaintiffs assert that this Court has jurisdiction "by virtue of the Labor Management Relations Act ('LMRA') § 301, 29 U.S.C. § 185 . . . ." *Id.* ¶ 14. They explain that "the Funds seek to enforce the terms and conditions of a valid collective bargaining and/or other labor agreement." *Id.* And, they assert supplemental jurisdiction under 29 U.S.C. § 1367 as to any claim that "does not exist under ERISA or the LMRA . . . ." *Id.* ¶ 15.

Further, plaintiffs claim that, under 29 U.S.C. § 1132, suit may be brought, at the "Funds' discretion, in the district where the plan is administered, where the breach took place, or where a

defendant resides, or may be found." *Id.* ¶ 16. In this regard, they assert that venue is proper in Maryland because the Pension Fund is administered in this State, *id.*, and the Union maintains its principal place of business in Maryland. *Id.* ¶ 17.

The Companies have moved to dismiss (ECF 6), supported by a memorandum (ECF 6-1) (collectively, the "Motion"). The Motion is predicated on Rule 12(b)(3) of the Federal Rules of Civil Procedure, asserting improper venue.[3] In the alternative, pursuant to 28 U.S.C. § 1404(a), the Companies ask the Court to transfer the case to the United States District Court for the Eastern District of Arkansas. Specifically, they contend that only one of the benefit funds is administered in Maryland; the SP Plaintiffs reside in Georgia; and defendants are citizens of Arkansas. ECF 6-1 at 1–2.[4]

With the Motion, defendants have included the Declaration of Shawna McCormick, the Secretary-Treasurer of McCormick Painting and President of McCormick Abatement. ECF 6-3. Defendants have also included a series of documents that appear to be related to certain collective bargaining agreements, discussed *infra*. ECF 6-4 to ECF 6-6. Plaintiffs oppose the Motion. ECF 11 (the "Opposition"). The Companies have replied. ECF 14 (the "Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will transfer the case to the District Court for the Eastern District of Arkansas.

## I.    Background

McCormick Painting and McCormick Abatement were parties to, "or agreed to abide by," certain collective bargaining or other labor agreements ("Bargaining Agreement" or "CBA") with

---

[3] The Companies also answered the Complaint. ECF 7.

[4] Throughout the Memorandum Opinion, the Court cites to the electronic pagination. However, the electronic pagination does not necessarily correspond to the page number imprinted on a particular submission.

one or more local union(s) or district council(s) "affiliated with" the Union. ECF 1, ¶ 18. Pursuant to the terms of the CBA, defendants are "bound to the governing documents" of plaintiffs (the "Trust Agreements"). *Id.* ¶ 19. The Trust Agreements are incorporated into the Bargaining Agreement. *Id.* ¶ 20. The Companies are required by these agreements to make timely contributions to the IUPAT Plaintiffs, the SP Plaintiffs, the Bargained Entities, and the Union, the sums of which are determined by the hours worked by defendants' employees. *Id.* If defendants are delinquent on these payments, they are required, pursuant to the Bargaining Agreement and Trust Agreements, to pay liquidated damages for each belated contribution, as well as interest. *Id.* ¶ 21. The agreements also require defendants to maintain "timecards," to be submitted, along with all relevant records, to the IUPAT Funds and the SP Funds. *Id.* ¶ 22. This is done so that the IUPAT Funds and the SP Funds can determine whether defendants have made full and prompt payments. *Id.* According to plaintiffs, if an audit reveals that such full and prompt payments were not made, then defendants are required to reimburse the IUPAT Funds and the SP Funds for these amounts, along with payment of audit fees and attorneys' fees. *Id.*; *see id.* ¶ 9.

The Complaint contains "three causes of action." ECF 1. The First Cause of Action, lodged by the IUPAT Funds and the SP Funds against both defendants, seeks payment of delinquent contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs. ECF 1 at 9. Plaintiffs allege that defendants "have a contractual duty to timely pay the required contributions to [the] Funds pursuant to the terms of the Bargaining Agreement and Trust Agreements," described, *infra*. *Id.* at 11. Moreover, plaintiffs assert that defendants "have a statutory duty to timely make the required payments to the Funds under ERISA § 515, 29 U.S.C. § 1145, and LMRA § 301(a)." *Id.* Further, plaintiffs contend that they have performed audits of the defendants' payroll records for the period January 1, 2018 through December 31, 2020. *Id.*

¶¶ 23–26, 32–35. According to plaintiffs, the audits found that McCormick Painting failed to report $77,373.91 to the IUPAT Funds and $198,148.97 to the SP Funds. *Id.* ¶¶ 23, 25, 32, 34. The audits also revealed that McCormick Abatement failed to report $14,556.18 to the IUPAT Funds and $36,285.22 to the SP Funds. *Id.* ¶¶ 24, 26, 33, 35.

The Second Cause of Action, brought by the IUPAT Funds against defendant McCormick Abatement, alleges that defendant "has a contractual duty to timely report and pay the required contributions to the IUPAT Funds pursuant to the terms of the Bargaining Agreement and Trust Agreements." *Id.* ¶ 45. And, plaintiffs allege that McCormick Abatement has a statutory duty under ERISA § 515, 29 U.S.C. § 1145, and LMRA § 301(a), to timely make the required payments to the IUPAT Funds. *Id.* According to plaintiffs, McCormick Abatement has failed to report and pay contributions to the IUPAT Funds for the following periods: February 2017 through February 2020; the month of December 20, July 2021 through September 2021; April 2022 through July 2022; the month of March 2023; and June 2023 through July 2024. *Id.* ¶¶ 29, 44.[5]

The Third Cause of Action is lodged by the IUPAT Funds and the SP Funds against the Companies. Plaintiffs allege failure to comply with contractual and statutory obligations to submit to an audit of defendants' payroll records for the period January 1, 2021 through the date of inspection. *Id.* ¶¶ 52, 53.

Plaintiffs seek a "declaration" that defendants "failed to comply with the Bargaining Agreement and Trust Agreements by failing to report and pay contributions to the ERISA Plaintiffs and Bargained Entities for the performance of covered work and by failing to comply with an audit of their records." ECF 1 at 15, ¶ 1. Plaintiffs also seek monetary damages in the form of "[a]ny

---

[5] The First Cause of Action seems to overlap with the Second Cause of Action as to the IUPAT Fund and McCormick Abatement for the period 2018 through 2020.

unpaid contributions, due at time of Judgment"; "Liquidated damages on all unpaid and late-paid contributions in an amount provided for under the Bargaining and Trust Agreements, and with respect to the ERISA Plaintiffs, ERISA § 502(g)(2)(c), 29 U.S.C. § 1132(g)(2)(c)"; "Interest on all late-paid and unpaid contributions . . . ."; as well as reasonable attorneys' fees, costs of suit, and audit fees. *Id*. at 15–16, ¶ 2.

In addition, plaintiffs seek injunctive relief in the form of an order, *inter alia*: (a) requiring defendants to comply with their obligations to the Funds under the Bargaining Agreement and the Trust Agreements, "including permitting an audit of their records . . ."; (b) enjoining defendants from violating the terms of the Bargaining Agreement, the Trust Agreements, and ERISA; and (c) enjoining defendants from disposing of any assets "until said terms" have been satisfied. *Id.* at 16, ¶ 3.

## II.    Standards of Review

### A.  Fed. R. Civ. P. 12

Section 1132(e)(2) of 29 U.S.C. governs venue in an ERISA case. It provides that a suit "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]" *Id*.

A defendant may challenge the plaintiff's choice of venue by way of a motion to dismiss under Rule 12(b)(3). The plaintiff bears the burden of demonstrating that venue is appropriate. *Bartholomew v. Virginia Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979), *cert. denied*, 446 U.S. 938 (1980), *overruled on other grounds by Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119 (1982); *accord Tinoco v. Thesis Painting, Inc.*, GJH-16-752, 2017 WL 52554, at *2 (D. Md. Jan. 3, 2017); *Jones v. Koons Auto. Inc.*, 752 F. Supp. 2d 670, 679 (D. Md. 2010).

If the court does not hold an evidentiary hearing, "the plaintiff need only make a prima facie showing that venue is proper." *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017) (citing *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004)). "In assessing whether there has been a prima facie venue showing, [the court views] the facts in the light most favorable to the plaintiff." *Aggarao v. MOL Ship Management Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012).

The Fourth Circuit has recognized that "it is possible for venue to be proper in more than one judicial district." *Mitrano*, 377 F.3d at 405). Thus, "the question is not whether a given district is the best venue, but whether the events or omissions that occurred there are 'sufficiently substantial.'" *Carefirst*, 235 F. Supp. 3d at 732 (quoting *Mitrano*, 377 F.3d at 405). And, in considering "whether events or omissions are sufficiently substantial to support venue . . ., a court should not focus only on those matters that are in dispute or that directly led to the filing of the action." *Mitrano*, 377 F.3d at 406. Instead, "it should review 'the entire sequence of events underlying the claim.'" *Id.* (quoting *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)); *accord Taylor v. Shreeji Swami, Inc.*, PWG-16-3787, 2017 WL 1832206, at *1 (D. Md. May 8, 2017); *Convergence Management Associates, Inc. v. Callender*, TDC-15-4015, 2016 WL 6662253, at *2 (D. Md. Nov. 10, 2016).

In resolving a Rule 12(b)(3) motion, the court may "freely consider evidence outside the pleadings . . . ." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006); *see Aggarao*, 675 F.3d at 365–66 ("On a motion to dismiss under Rule 12(b)(3), the court is permitted to consider evidence outside the pleadings."); *Taylor*, 2017 WL 1832206, at *1 (same); *Convergence Mgmt. Assocs., Inc.*, 2016 WL 6662253, at *2 (same). Accordingly, in evaluating the challenge to the Complaint under Rule 12(b)(3), I may consider the exhibits that were filed in connection with the Motion. *See* ECF 6-3 to ECF 6-6.

## B.  28 U.S.C. § 1404

If the Court declines to dismiss the suit, defendants ask, in the alternative, for a transfer of the case to the Eastern District of Arkansas, pursuant to 28 U.S.C. § 1404(a).  It provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."

Notably, § 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  This helps "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Id.* (citation omitted).  Put another way, § 1404 enables the courts to "prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

A motion to transfer under 28 U.S.C. § 1404(a) "calls on the district court to weigh in the balance a number of case-specific factors."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).  These include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."  *Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see, e.g.*, *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008); *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005); *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).  Other factors include the "local interest in having localized controversies settled at home" and the "appropriateness in having a trial of a

diversity case in a forum that is at home with the state law that must govern the action." *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004).

Under § 1404(a), the moving party bears the burden of showing, by a preponderance of the evidence, that transfer to another venue is proper. *See Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 607 (D. Md. 2014); *CoStar Realty Info.*, *Inc. v. Meissner*, 604 F. Supp. 2d 757, 770 (D. Md. 2009); *Lynch*, 237 F. Supp. 2d at 617. With respect to hardship on witnesses and parties, in order for the movant to meet its burden, "the movant should submit, for example, affidavits from witnesses and parties explaining the hardships they would suffer if the case were heard in the plaintiff's chosen forum." *Dow v. Jones*, 232 F. Supp. 2d 491, 499 (D. Md. 2002) (citing *Helsel v. Tishman Realty & Constr. Co.*, 198 F. Supp. 2d 710, 712 (D. Md. 2002)). As Judge Blake observed in *Dow*, 232 F. Supp. 2d at 499, where the movant only provides "[m]ere assertions of inconvenience or hardship," it will not have met its burden.

Ultimately, however, "[t]he decision whether to transfer venue is committed to the sound discretion of the trial court." *Mamani*, 547 F. Supp. 2d at 469; *see Volkswagen*, 545 F.3d at 312 ("'There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer.'"); *see also Plumbing Servs., Inc.*, 791 F.3d at 443; *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984).

Section 1406(a) of 28 U.S.C. is also pertinent. It states: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

### III.    Discussion

### A.  Motion to Dismiss

Defendants, asserting improper venue in Maryland, have moved to dismiss this action in its entirety, pursuant to Rule 12(b)(3).  *See* ECF 6, ECF 6-1.

Both sides acknowledge that venue in an ERISA case is governed by 29 U.S.C. § 1132(e)(2).  *See* ECF 6-1 at 3 (defendants); ECF 11 at 13 (plaintiffs).  Section 1132(e)(2) provides that a suit "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]"[6]

Defendants "concede that the IUPAT Pension Fund is administered in Maryland, and so venue is *technically* correct as to it."  ECF 6-1 at 3 (emphasis in original).  However, defendants argue that dismissal is warranted because, with the exception of the IUPAT Pension Fund, plaintiffs have not established that Maryland is the appropriate venue for the plaintiffs.  ECF 6-1 at 3–4.  Further, the Companies point out that both McCormick Painting and McCormick Abatement are Arkansas corporations that "reside" in Arkansas, where they "primarily do business."  *Id*. at 2.  And, defendants claim that the Companies' "sole contact" with Maryland "is

---

[6]  Ordinarily, "the venue of all civil actions" filed in federal district court is governed by 28 U.S.C. § 1391.  Under § 1391(b), venue exists in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

mailing monthly contributions for certain employees on behalf of Defendants' employees to the IUPAT Pension Fund." *Id*. at 5.

In addition, defendants note that the SP Plaintiffs "reside" in and are "domiciled" in Georgia. *Id.* at 4, 5. Moreover, defendants contend that plaintiffs Southern Painters Welfare Fund and FTI do not administer their plans in Maryland. *Id.* at 4. Although the Annuity Plan and FTI each have an address in Maryland, defendants maintain that the Complaint "does not plead that they are administered" in Maryland, and that the residency of the IUPAT Annuity Plan is unclear. *Id*. And, defendants assert that "the Complaint contains no information about the SP Plaintiffs' contacts with Maryland, a venue to which the SP Plaintiffs apparently have no relationship." *Id.*

Plaintiffs describe two "categories" of plaintiffs here: "international pension benefit funds, which are administered in Maryland; and southern welfare benefit funds that are administered in Tennessee." ECF 11 at 7. They posit: "Venue [in Maryland] is proper as to both." *Id.* Plaintiffs explain that they chose "Maryland as the venue given that a majority of the Plaintiffs are the international pension benefit funds administered in the State of Maryland." *Id.*

Plaintiffs acknowledge that the SP Funds maintain their principal place of business in Tennessee, and are administered there. *Id.* at 10. But, they focus on the IUPAT Pension Fund, the IUPAT Annuity Plan, and FTI, noting that they are administered in Maryland. *Id.* at 13–14. They assert that "the Pension Fund and Williams act as collection fiduciaries for the Annuity Plan and FTI and manage these assets or actions from the Pension Funds' office located at 7234 Parkway Drive, Hanover, Maryland." *Id.* at 14 n.3 (citing ECF 1, ¶¶ 1–4).[7]

---

[7] Plaintiffs contend that "the Complaint sets forth the location of management of the Annuity Plan and FTI. . . ." ECF 11 at 14 n.3. Although they cite ECF 1, ¶¶ 1 to 4 to support their claim that the Complaint indicates that management is in Maryland, these paragraphs do not contain that assertion.

According to plaintiffs, an ERISA plan is administered at the location where the plan is managed.  ECF 11 at 14 n.3.  In support of this position, they cite *Hudson v. Plumbers & Steamfitters Loc. No. 150 Pension Fund*, No. 8:23-CV-6422-JDA, 2024 WL 1506776, at *2 (D.S.C. Apr. 5, 2024),  *See* ECF 11 at 14 n.3.  Because the Annuity Plan and FTI are managed in Maryland, plaintiffs contend that "the location of administration (in Maryland) is established or averred."  *Id.*

In addition, plaintiffs dispute that "the entire action must be dismissed or transferred to Arkansas."  *Id.* at 7.  They posit that "no Plaintiffs resides [sic] or has direct venue connections" with Arkansas.  *Id.* (emphasis removed).  Instead, as to the claims of the SP Funds, plaintiffs ask this Court to apply the pendent venue doctrine.  *Id.*  Plaintiffs explain that the doctrine "allows the Court to retain venue for claims that are otherwise without venue, so long as venue is proper for other claims that are substantially related or similar."  *Id.*  They add that the doctrine "exists to ensure that such identical or overlapping claims are not wastefully severed or adjudicated in multiple Federal jurisdictions."  *Id.* at 8.  And, they maintain that plaintiffs' claims "fall squarely within the doctrine."  *Id.* at 7.

According to plaintiffs, they may establish "venue over other federal law claims after venue as to the principal federal law claim has been established so long as all claims arise from the same nucleus of facts."  *Id.* at 15 (citing *Coastal Labs, Inc. v. Jolly*, 502 F. Supp.3d 1003, 1024 (D. Md. 2020)).  To that point, plaintiffs maintain that the claims lodged by the SP Funds "involve the exact same audit of Defendants for the exact same period that was conducted by the international benefit funds; seek the exact same delinquent hours or contributions under audit; pursue the same missing reports and outstanding payments for post-audit work; request the same additional audit(s) for the same additional period(s); and request identical relief under the same statutory provisions."  ECF

11 at 7–8.  They also claim that the SP Plaintiffs rely on the same Bargaining Agreement and/or Trust Agreements as the IUPAT Funds.  *Id*. at 12.  Thus, plaintiffs argue:  "Quite simply, the Plaintiffs' claims are not just similar, they are exactly the same."  *Id*. at 8.

Further, plaintiffs maintain that if the Court dismisses the Complaint, the SP Funds "would be forced to file their action in Tennessee, while the IUPAT Funds refile their identical action in Maryland."  *Id.* at 17.  They posit:  "It is hard to envision circumstances more warranting or deserving of application of the pendant [sic] venue doctrine."  *Id.*  In this regard, they reiterate that the "claims unquestionably arise under the same set of operative facts and law."  *Id.* at 17–18. Therefore, plaintiffs maintain, *id.* at 17: "Judicial economy would simply not be served to have parties litigate the same exact issues in two separate jurisdictions, with two jurisdictions resolving issues based upon the same set of facts and legal issues.  It would also not serve fairness if two separate courts were making interpretations under the same contract based upon the very same set of facts involving the same set of parties."  And, plaintiffs add that "the parties would have to engage in and conduct discovery in multiple jurisdictions which would only be costly and more time consuming for all involved."  *Id*. at 18.

As noted, defendants "concede that venue is 'technically' appropriate [in Maryland] as to the IUPAT Pension Fund and IUPAT Annuity Plan . . . as they are administered in Maryland." ECF 14 at 2 n.1.  But, defendants maintain that plaintiffs' broad reading of ERISA's venue provision inserts language into the statute that is not there.  *Id.* at 6 (citing argument of plaintiffs that the statute's language allows suit to be brought "in any federal district," ECF 11 at 15).

As to pendent venue "in the ERISA context," defendants maintain that courts have required plaintiffs to show venue is proper as to each defendant and each claim.  *Id.* at 5 (citing *Kurisu v. Svenhard Swedish Bakery Supplemental Key Mgmt. Ret. Plan*, No. 20-CV-06409-EMC, 2021 WL

2474439 (N.D. Cal. June 17, 2021). They posit: "ERISA requires that the SP Plaintiffs establish venue under that statute, and they cannot do so." ECF 14 at 5. In addition, defendants argue, *id.* at 1–2: "There is no authority that permits separate parties from piggybacking on another party's legal theory in order to establish jurisdiction."

To support plaintiffs' position in regard to pendent venue, they rely, *inter alia*, on *Coastal Labs, Inc.* 502 F. Supp.3d 1003. Their reliance is misplaced.

In that case, two plaintiffs brought suit against a number of doctors and corporations with regard to their conduct as it related to "Plaintiffs' efforts to acquire [COVID-19] medical testing laboratories to assist their infection control management program designed specifically for nursing homes." *Id.* at 1011. Unlike in this case, the claims involved common law business torts with no statutory venue provisions. *Id.* at 1023–24. Accordingly, the court considered jurisdiction under 28 U.S.C. § 1391(b), which provides for venue where "a substantial part of the events or omissions giving rise to the claim occurred." *Id.* at 1023 (quoting 28 U.S.C. § 1391(b)). Based on the plaintiffs' allegations, the court found venue in Maryland. *Id.* at 1024.

Plaintiffs also rely, *inter alia*, on *Abissi v. United States Citizenship & Immigration Services*, JKB-23-03176, 2024 WL 1485887 (D. Md. Apr. 5, 2024), to argue that the Court should apply the pendent venue doctrine. But, *Abissi* is also inapposite.

In *Abissi*, seven individual plaintiffs, two of whom were residents of Maryland, brought suit under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). *Abissi*, 2024 WL 1485887, at *2. In determining whether venue in Maryland was proper, the court pointed to FOIA's venue provision, which provides that venue "lies only in the district in which the records that the plaintiff wishes 'to enjoin the agency from withholding' 'are situated.'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(B)). But, plaintiffs asked the court to apply the pendent venue doctrine, which the

court described as follows: "Pendent venue is a discretionary, judge-made doctrine that permits a court to hear claims for which venue does not properly lie in the district when they are closely related to claims for which venue is proper." *Id*. The court declined to invoke pendent venue, explaining: "Courts are hesitant to employ pendent venue when, as here, Congress has enacted a special venue provision for the [FOIA] claim at issue." *Id*.

The same rationale applies here. The ERISA statute expressly governs venue, and it does not carve out the exception that plaintiffs advance.

The case of *Local 8A-28A Welfare & 401(K) Retirement Funds v. Golden Eagles Architectural Metal Cleaning & Refinishing*, 277 F. Supp. 2d 291 (S.D.N.Y. 2003), is also distinguishable. *Id.* That case involved multiple funds that brought an ERISA action in the Southern District of New York. The court declined to dismiss the ERISA claims for improper venue. But, the plaintiffs alleged that *both* Funds were administered in the Southern District of New York, where the suit was filed. *Id.* at 295–96.

The other cases to which plaintiffs cite are ones in which plaintiffs sued defendants alleging federal claims in the proper venue of a federal district court, and they also sought to bring state law claims arising from the same nucleus of operative facts in the same litigation. *See, e.g.*, *Miller v. Asenio*, 101 F. Supp. 2d 395, 409 (D.S.C. 2000) (applying pendent venue doctrine as to state-law claims of fraud where the claims arose from the same nucleus of operative fact as the federal claim and venue was already established as proper as to federal claim). These are not analogous to the facts here, where all of plaintiffs' claims are brought under federal law.

In sum, nothing in the ERISA statute permits the SP Plaintiffs to bring their claims in Maryland merely because the IUPAT Plaintiffs can properly assert venue in Maryland, and the claims of the SP Plaintiffs happen to involve the same defendants, the same documents, and the

same audit. *See* 29 U.S.C. § 1132(e)(2). Despite the commonality and similarity of the factual allegations and the defendants, venue in this District is improper as to plaintiffs Welfare Fund; FTI Council 10; Canning; and Wohl. Simply put, the SP Funds are not administered in Maryland, no breach is alleged to have occurred in Maryland, and defendants do not reside in Maryland. Although plaintiffs' concern as to judicial economy is certainly not specious, that concern does not create venue in Maryland.

Because venue in Maryland is proper as to the IUPAT Plaintiffs, it follows that there is no ground to dismiss the suit as to them. This begs the question of what to do in regard to the claims of the SP Plaintiffs. Under the circumstances attendant here, the Court has several options.

The Court could dismiss the SP Plaintiffs from the case altogether, or sever their claims, under Fed. R. Civ. P. 21. Rule 21 provides: "Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." If the Court were to dismiss the SP Plaintiffs, they would have to decide whether or where to pursue their claims.

Alternatively, under 28 U.S.C. § 1404, the Court could transfer the SP Plaintiffs' severed claims to a jurisdiction with proper venue. Or, the Court could transfer the entire case to a jurisdiction in which there is proper venue as to all plaintiffs.

*Dukes v. Wal-Mart Stores, Inc.*, No. C01-2252 MJJ, 2001 WL 1902806, at *9 (N.D. Cal. Dec. 3, 2001), is instructive. There, the court faced a similar dilemma: some plaintiffs had established proper venue under a statutory venue provision but others had not. *Id.* The court concluded, *id.*: "Dismissal or transfer of the entire action would be too harsh a penalty, especially since two of the six plaintiffs are properly venued here." *Id.* The court cited *Anrig v. Ringsby United,* 603 F.2d 1319, 1324–1325 (9th Cir.1978), in which the Ninth Circuit vacated the district

court's dismissal of the entire action for certain improperly venued defendants because "dismissal of the entire action for improper venue is a penalty too severe . . . ." *Id.* at 1327. Moreover, in view of the circumstances, the *Anrig* Court reasoned that "such dismissal is improper without a prior investigation of the possibility of dismissing or transferring parties under either [Fed. R. Civ. P.] 21 or 28 U.S.C. 1406(a)." *Id.* Accordingly, the *Dukes* Court chose to "dismiss the improperly venued plaintiffs, allowing the case and the California plaintiffs to remain if they so choose." *Dukes*, 2001 WL 1902806, at *9.

In another case in this District, the court declined to exercise pendent venue over some of the plaintiff's claims and, instead, transferred the entire case to another court. *See Holmes-Hamilton v. Fed. Bureau of Investigation*, GJH-21-00702, 2021 WL 5166376, at *4 (D. Md. Nov. 5, 2021). But, in that case, the parties had "agree[d] that Plaintiffs' cases should remain combined." *Id.* The parties here have not agreed to a similar arrangement.

I turn to consider these options.

## B.  Severance and Transfer

Defendants ask the Court, in the alternative, to transfer the entire case to the Eastern District of Arkansas, pursuant to 28 U.S.C. § 1404(a). ECF 6-1 at 5. Plaintiffs oppose the request. ECF 11 at 8.

If I deny the transfer request, I must either dismiss the SP Plaintiffs, without prejudice to their right to refile suit elsewhere, or sever their claims and transfer the claims to a district with venue. Fed. R. Civ. P. 21, which authorizes severance of parties and/or claims, and 28 USC § 1404(a), governing transfers among federal district courts, "are [both] designed to facilitate just, convenient, efficient and less expensive determination." *In re Nintendo of America, Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *see also Def. Distributed v. Bruck*, 30 F.4th 414, 427 (5th Cir. 2022).

To assure that the case is litigated in one action, a transfer to a district with venue as to all plaintiffs is necessary.

### 1.  Severance

The Court first considers whether to sever the SP Plaintiffs and/or their claims, so as to allow the IUPAT Plaintiffs to proceed in Maryland, while the SP Plaintiffs are either dismissed or transferred to another court.

Under Rule 21, a district court has "broad discretion" to sever parties and claims.  *See, e.g.*, *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994); *United States v. O'Neil*, 709 F.2d 361, 369 (5th Cir. 1983); *see also Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007); *M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002); *Deskovic v. City of Peekskill,* 673 F.Supp.2d 154, 159–60 (S.D.N.Y. 2009); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 1689 (4th ed. 2018).  If all the claims cannot be transferred to a single district court, a court may sever the claims and transfer some while allowing the remaining claims to proceed as a separate case.  *See M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 295 (D.D.C. 2018); *Pinson v. U.S. Dep't of Justice*, 74 F.Supp.3d 283, 288 (D.D.C. 2014); *see also Spaeth v. Mich. State Univ. Coll. of Law*, 845 F.Supp.2d 48, 57 n.13 (D.D.C. 2012) (severing claims prior to transferring venue under Section 1404(a)).

There is "a presumption in favor of the nonmoving party that all claims in a case will be resolved in a single trial and not be severed, placing the burden on the party moving for severance to show that (1) it will be severely prejudiced without a separate trial; and (2) the issue to be severed is so 'distinct and separable' from the others that a trial of that issue alone may proceed without injustice." *Hudock v. Kent Cnty. Bd. of Educ.*, CCB-14-2258, 2015 WL 1198712, at *18 (D. Md. Mar. 16, 2015) (quoting *Equal Rights Ctr.*, 483 F. Supp. 2d at 489) (quotation omitted).

In making this determination, courts consider multiple factors, including: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes; (4) the availability of witnesses and other evidentiary proof; and (5) the potential for confusion, undue delay, or prejudice to any party. *See, e.g.*, *M.M.M.*, 319 F. Supp. 3d at 295; *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 24-25 (S.D.N.Y. 2016); *Wultz v. Islamic Republic of Iran*, 762 F.Supp.2d 18, 32-33 (D.D.C. 2011); *Agnesini v. Doctor's Assocs., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y. 2011); *Kehr v. Yamaha Motor Corp.,* 596 F.Supp.2d 821, 826 (S.D.N.Y. 2008)**;** *Khanna v. State Bar of Cal.,* No. 07-2587, 2007 WL 2288116, at *2-3 (N.D. Cal. Aug. 7, 2007); *M.K.*, 216 F.R.D. at 137–38; *see also Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968), *cert. denied*, 393 U.S. 977 (1968).

For example, in *Defense Distributed v. Bruck*, 30 F.4th at 422–23, plaintiff appealed a district court's severance of its claims against the New Jersey Attorney General ("NJAG") for actions that plaintiff alleged constituted infringement of its rights under the First Amendment, as well as tortious interference with a settlement agreement it had previously reached with the U.S. State Department related to the 3D printing of firearms, and against the State Department for its alleged failure to comply with the Settlement Agreement.  The district court severed the claims upon finding that the State Department was only indirectly connected to the claims lodged against the NJAG and that the administration of justice would not be materially advanced by transfer.  *Id.* at 429.

The Fifth Circuit concluded that the district court's order severing and transferring some claims constituted a "clear abuse of discretion."  *Id.* at 436.  The court highlighted that "the principal claims against both defendants are temporally and factually intertwined to the extent that

litigation in separate courts would largely overlap." *Id.* at 430. Moreover, the court stated, *id.* at 431: "[B]ecause of the complex factual interactions among Plaintiffs and these Defendants, discovery and trial for the principal claims will require many of the same witnesses. No efficiency exists from conducting two fact-based litigations half a continent apart." The same logic applies here.

Neither side has moved to sever the claims in the case. But, in urging the Court to invoke pendent venue, plaintiffs suggest that it is appropriate to avoid requiring them to proceed in two separate actions. They state that, if the Court declines to exercise pendent venue, the SP Funds "would be forced to file their action in Tennessee, while the IUPAT Funds refile their identical action in Maryland." ECF 11 at 17.

I agree that severance of the SP Plaintiffs' claims would likely result in the burden of two separate civil actions. *O'Neil*, 709 F.2d at 368; *see also Pinson*, 74 F.Supp.3d at 288 n.7; Wright, Miller & Kane, *supra*, § 1689. If I were to sever the case, so as to allow the IUPAT Plaintiffs to proceed in Maryland, while either dismissing the SP Plaintiffs, without prejudice, or transferring their claims to a jurisdiction with proper venue, two courts would be evaluating the same contracts and the same conduct of two defendants, and would hold trials involving the same legal issues, with most of the same witnesses. "No efficiency exists from conducting two fact-based litigations" a few hundred miles apart. *Def. Distributed*, 30 F.4th at 431.

### 2. Transfer

Thus far, I have concluded that the IUPAT Plaintiffs have established proper venue in Maryland but the SP Plaintiffs have not done so. I have also concluded that, in the interests of convenience and efficiency, it is preferable to avoid two separate civil cases. I must next consider

whether it is appropriate to transfer the entire case and, if so, whether to transfer it to the Eastern District of Arkansas or the Middle District of Tennessee.

As stated, an ERISA case "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]" 29 U.S.C. § 1132(e)(2). The IUPAT Funds maintain their principal place of business in and are administered from Maryland. ECF 11 at 10. The SP Funds maintain their principal place of business in and are administered from Tennessee. *Id.* Thus, venue is proper in the Middle District of Tennessee for the SP Plaintiffs, because the SP Funds are administered there. But, there does not appear to be any basis for venue in Tennessee for the IUPAT Plaintiffs, because the IUPAT Funds are not administered there, defendants do not reside there, and neither side claims that the alleged breach took place there.

However, defendants contend that the entire case could have been brought in federal court in the Eastern District of Arkansas. ECF 6-1 at 6. They explain that "defendants reside there and the actions that are the subject of this case, including the negotiation of the collective bargaining agreements, the determination of whether certain employees were covered by these agreements, and the decision not to remit fund contributions on their behalf, all occurred in Arkansas." *Id.* In opposition, plaintiffs ask the Court to deny the transfer of "this matter" because "the only thing effectuated by the Motion is a shift of burden from Defendants to Plaintiffs, although Plaintiffs deny that any real or relevant burden for Defendants exists." ECF 11 at 8.

Defendants are Arkansas corporations that transact business and maintain offices there. Therefore, personal jurisdiction is proper as to them in Arkansas. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (bracket in *Daimler*) (citation

omitted).  And, venue exists in the Eastern District of Arkansas for all plaintiffs because, under the applicable statute, venue is proper where the defendants reside or where the alleged breach took place, both of which are in Arkansas.

Under 28 U.S.C. § 1404(a), a district court, "in the interest of justice," and for "convenience," may transfer any civil action to "any other district . . . where it might have been brought."  The "preliminary" inquiry focuses on whether the civil action "might have been brought in the destination venue."  *Volkswagen*, 545 F.3d at 312 (internal quotations omitted).  In order to satisfy that requirement, venue in the transferee court must be proper, and that court must have personal jurisdiction over the defendant.  *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).

Because this suit "might have been brought in the destination venue," *i.e.*, the Eastern District of Arkansas, *Volkswagen,* 545 F.3d at 312, the Court must weigh several factors in considering the motion to transfer under § 1404(a).  These include: (1) the weight accorded to plaintiff's choice of venue; (2) the convenience of the witnesses; (3) the convenience of the parties; and (4) the interest of justice.  *Plumbing Servs., Inc.*, 791 F.3d at 444.  I turn to review the factors.

### (i) Plaintiff's Choice of Venue

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'"  *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 1988)); *see also, e.g.*, *Arabian v. Bowen*, 966 F.2d 1441 at *1 (4th Cir. 1992) (per curiam) (table); *Lynch*, 237 F. Supp. 2d at 617.  Ordinarily, unless the balance of factors points "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984); *see Gilbert*, 32 F. Supp. 3d at 607; *Mamani*, 547 F. Supp. 2d. at

469.  This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'"  *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)); *see also, e.g.*, *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013) (recognizing that a plaintiff's choice of venue should be afforded substantial deference where "plaintiff has filed suit in his home state"); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1077 (W.D. Wis. 2013) ("Because plaintiff . . . has chosen its home forum in which to litigate, its choice is particularly deserving of deference.").

As indicated, a plaintiff's choice of forum "is ordinarily accorded considerable weight. . . ."  *Lynch*, 237 F. Supp. 2d at 617.  But, "that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy."  *Id.*; *see also Bannister v. Wal-Mart Stores E., L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) ("[T]he deference given to a plaintiff's choice of forum is proportionate to the relationship between the forum and the cause of action."); *Mamani*, 547 F. Supp. 2d at 473 ("[A] court need not accord the choice as much weight when the 'forum has no connection with the matter in controversy.'") (citation omitted); *Bd. of Trs.*, 508 F. Supp. 2d at 477 (observing that the weight of plaintiff's choice of forum "varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action").

According to defendants, Maryland has no "meaningful connection to the dispute at issue in this case."  ECF 6-1 at 7.  This is because at least two of the plaintiffs are not domiciled in Maryland, and defendants contend that they have no connection whatsoever to Maryland.  *Id*.  In defendants' view, plaintiffs' choice may favor this Court retaining jurisdiction, but "it does so just

barely and not enough to override the inconvenience that would be visited upon potential witnesses and the parties if this case were litigated in Maryland." *Id*. at 8.

In response, plaintiffs argue that "there [are] ample connections between the parties, claims and Maryland," and therefore plaintiffs' choice of venue should be afforded "significant weight." ECF 11 at 20. Moreover, according to plaintiffs, defendants' argument that Arkansas is a more convenient venue "does not support how venue would be appropriate for Plaintiffs." *Id*. at 21. In their view, defendants focus only on the convenience of their owners and employees. *Id.* at 8.

Defendants cite *International Painters & Allied Trade Industry Pension Fund v. Marrero Glass & Metal Inc.*, ELH-18-452, 2019 WL 423409 (D. Md. Feb. 1, 2019), to support their argument for transfer. ECF 6-1 at 7. They argue that a plaintiff's choice of forum is "significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy.'" *Id*. at *4.

In *Marrero*, I determined in the § 1404(a) analysis that transfer from Maryland was favored to avoid duplicative litigation, and I noted that the transferee court in Pennsylvania was "intimately familiar with the relevant facts and allegations set forth in this case as well as the Settlement Agreement that was entered." *Id*. at *6. Moreover, I stated, *id*.: "Because the Eastern District of Pennsylvania has invested substantial time and energy to become familiar with the facts of this case, transfer would promote judicial economy."

Although no court has invested substantial time and energy to become familiar with the facts of the case yet, transferring the entire case to Arkansas would avoid duplicative litigation and promote judicial economy. I conclude that this factor weighs in favor of transfer.

### (ii) Convenience of Witnesses

"Perhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000); *accord Mamani*, 547 F. Supp. 2d at 473; *see also* WRIGHT, MILLER & Kane, *supra*, § 3851 at 253 ("The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. § 1404(a)."). However, "the convenience of witnesses who are employees of a party is entitled to less weight because that party can obtain their presence at trial." WRIGHT, MILLER & Kane, *supra*, § 3851 at 278.

According to defendants, this case will involve a "fact-intensive inquiry into the negotiation of the various CBAs between the parties, the work that employees perform (and whether it brings employees under the purview of the applicable labor contract), why the decision was made that certain individuals were not covered by a CBA, as well as other similar issues," and "[a]ll of the individuals involved in those negotiations are located in Arkansas." ECF 6-1 at 8. This includes a union representative, Lindsey Brown, of IUPAT Local 424. ECF 14 at 8.

Defendants allege that Brown advised them that "employees who were not in the bargaining unit could, on a voluntary basis, elect to be covered by certain of the Funds and that such participation could end at any time." ECF 6-3 at 3. They contend that they understood this to mean "that these employees were not in the bargaining unit represented by IUPAT." *Id*. And, according to defendants, because Local 424 is not a party to this case, that makes Brown a non-party witness, and Brown resides in Arkansas. ECF 14 at 8; *see id.* at 8 n.7. The Companies also maintain that the individuals related to the SP Plaintiffs are in Georgia, but Arkansas would be more convenient for them than Maryland. ECF 6-1 at 9.

Plaintiffs posit that defendants' Motion does not "identify or explain how a non-party witness will be inconvenienced by venue in Maryland." ECF 11 at 22. Moreover, plaintiffs maintain that "venue in Maryland favors arguably the most central or critical non-party witness" because the individuals who audited defendants are located in Pennsylvania. *Id*. at 23. And, plaintiffs maintain that transfer to Arkansas is inappropriate because the parties can "mitigate inconvenience factors" by having the witnesses testify remotely. *See id*.

As defendants observe, plaintiffs do not identify any authority suggesting that the availability of remote testimony renders moot this factor of the transfer test. ECF 14 at 8. The Companies point to cases in which courts in this District have "highlighted the importance of live testimony in ERISA cases, particularly where they turn on the interpretation of a collective bargaining agreement." *Id*.

One of these cases, *International Masonry Training & Education Foundation v. Hawaii Masons' Training Fund*, 8:18-CV-03320-PX, 2019 WL 1492684 (D. Md. Apr. 3, 2019), involved inconvenience to witnesses based on a trial in Maryland, which weighed heavily in favor of transfer to Hawaii, where defendants and witnesses resided, and where the relevant conduct, such as the negotiation of the applicable collective bargaining agreement, took place. *Id*. at *3. But, travel between Maryland and Arkansas is far less of a hardship as compared to travel between Maryland and Hawaii. Moreover, in our post COVID-19 world, remote depositions have become much more common. *See Navarro v. Target Corp.*, No. 1:24-CV-00280-JLT-SAB, 2024 WL 4668049, at *8 (E.D. Cal. Nov. 4, 2024).

Overall, neither side's argument regarding convenience of non-party witnesses is persuasive.

### (iii) Convenience of the Parties

"A defendant moving for transfer must show both that the original forum is inconvenient for it and that the plaintiff would not be substantially inconvenienced by a transfer." WRIGHT, MILLER & Kane, *supra*, § 3849 at 217. Notably, "transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other." *Id.* at 216; *see Pinpoint IT Services, L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. 2011) ("[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused.").

Defendants contend that they are "small companies with a relatively small number of senior management," and "taking them out of town for days (or even weeks) at a time would be an undue burden to these small businesses." ECF 6-1 at 9. Moreover, defendants point out that plaintiffs' counsel is located in California, and Arkansas is no more an inconvenient venue for counsel than Maryland. *Id*. at 10. However, this is not entirely correct. Although one of plaintiffs' two lawyers is located in California, the other has a Pennsylvania address. *See* ECF 11 at 26.

The Companies also argue, ECF 14 at 11: ". . . Plaintiffs all voluntarily conducted business in Arkansas by transacting with Defendants and accepting contributions from Defendants that came from Arkansas. Conducting business in a state carries with it the possibility that one might have to litigate in the state." But, the same can be said for defendants, who transacted with and contributed to funds that were managed in Maryland and Tennessee.

Plaintiffs insist that they "would be substantially inconvenienced by a transfer to the Eastern District of Arkansas." ECF 11 at 24. They argue that the IUPAT Funds currently have more than fifty actions pending before this Court but none in a district court in Arkansas, and that the SP Funds have no relationship to Arkansas. *Id*. They add that plaintiffs' counsel is primarily

located in Pittsburgh, which is closer to Maryland than Arkansas. *Id.* In sum, plaintiffs argue, *id.* at 25: "Quite simply, Defendants have not shown that transfer benefits or conveniences anyone other than themselves."

Maryland is obviously a convenient forum for the IUPAT Plaintiffs. But, it is inconvenient for the SP Plaintiffs, and also for some key witnesses and for defendants. *See id.* On the other hand, Arkansas is a convenient forum for defendants and some key witnesses, but not for the IUPAT Plaintiffs, the SP Plaintiffs, and some other key witnesses. The proper venues for the SP Plaintiffs are in Tennessee and Arkansas. But, the only connection to Tennessee cited by either side is that the SP Plaintiffs' funds are administered there. *See id.* at 7.

Again, the case as to the SP Plaintiffs cannot be litigated in Maryland. It follows that the SP Plaintiffs will have to litigate their case elsewhere. Therefore, to the extent that plaintiffs argue against the transfer because they are familiar with Maryland and unfamiliar with the possible transferee jurisdictions, the concern rings hollow.

### (iv) Interests of Justice

A final factor for a court's consideration is whether transfer is in the interests of justice. This factor is "amorphous and somewhat subjective," and allows a court to "consider many things." WRIGHT, MILLER & Kane, *supra*, § 3854 at 313–18. In assessing whether transfer would meet the interests of justice, additional factors that courts consider are the pendency of a related action, the court's familiarity with the applicable law, docket conditions, and the ability to join other parties. *See Bd. of Trustees v. Baylor Heating & Air Conditioning*, 702 F. Supp. 1253, 1260 (E.D. Va. 1988).

"A significant factor in considering the interests of justice is 'avoiding duplicative litigation in courts,' and the Court 'may appropriately consider the conservation of judicial resources and

comprehensive disposition of litigation.'" *Mamani*, 547 F. Supp. 2d at 474 (quoting *Cronos*, 121 F. Supp. 2d at 466); *see also* WRIGHT, MILLER & Kane, *supra*, § 3854 ("[M]any courts have transferred to a forum in which other actions arising from the same transaction or event, or which were otherwise related, were pending."). When a similar case is already pending in another district, transfer of related claims is "favored" because it "may facilitate efficient pretrial proceedings and discovery" and also "because it avoids inconsistent results." *D2L Ltd.*, 671 F. Supp. 2d at 783. Moreover, there is "judicial economy in having the same judge consider the same underlying facts and issues only once[.]" *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 939 (E.D. Va. 2005); s*ee also D2L Ltd.*, 671 F. Supp. 2d at 783 ("The interest of justice weighs heavily in favor of transfer when a related action is pending in the transferee forum.").

In this case, there is no pending action in another district court. But, in urging the Court to invoke pendent venue in order to keep the entire case in Maryland, plaintiffs make the best argument for transferring the case to a jurisdiction with complete venue. In arguing that the entire case should remain in Maryland, they assert that the "claims unquestionably arise under the same set of operative facts and law." *Id.* at 17–18. Therefore, they state, *id.* at 17: "Judicial economy would simply not be served to have parties litigate the same exact issues in two separate jurisdictions, with two jurisdictions resolving issues based upon the same set of facts and legal issues. It would also not serve fairness if two separate courts were making interpretations under the same contract based upon the very same set of facts involving the same set of parties." And, "the parties would have to engage in and conduct discovery in multiple jurisdictions which would only be costly and more time consuming for all involved." *Id.* at 18.

But, as stated several times, the entire case cannot be litigated in Maryland. And, a transfer of the case to a jurisdiction with proper venue as to all plaintiffs would enable one judge to consider

the entire case. That is an important efficiency that would be lost if the SP Plaintiffs are severed and/or transferred. This circumstance weighs strongly in favor of transfer of the entire case.

"Another element relevant to the interest of justice is a comparison of the docket conditions in the two courts." WRIGHT, MILLER & Kane, *supra*, § 3854. In considering this factor, "'the real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.'" *In re Factor VIII or IX Concentrate Blood Prod. Litig.*, 484 F.3d 951, 958 (7th Cir. 2007) (alteration omitted) (quoting *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984)). Generally, this factor does not command substantial weight in considering whether to transfer a case. *See, e.g.*, *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 793 (E.D. Va. 2007).

In this case, transfer to Arkansas might facilitate a speedier resolution of the case, given that the median time to trial in the Eastern District of Arkansas is faster than in Maryland. During the 12-month period ending September 30, 2024, the median time to trial was 41 months in the District of Maryland but was only 32.5 months in the Eastern District of Arkansas. Federal Judicial Caseload                                                                                                     Statistics, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2024.pdf. Although this element does not command great weight, it favors transfer.

Defendants argue that the interests of justice favor transfer because Arkansas "has an interest in the outcome of this dispute on behalf of its residents." ECF 6-1 at 11. They explain that "a number of employees who live in Arkansas will be covered by a collective bargaining agreement and thus entitled to coverage by various union-sponsored health and welfare, pension and other funds." *Id.*

Plaintiffs respond that this contention reflects a misunderstanding of how ERISA benefit funds operate. ECF 11 at 25. They assert that "Plaintiffs do not have separate accounts or repositories for each employee," but rather, "money is collectively managed and administered in common accounts." *Id*. Thus, plaintiffs argue that any "recovery is just as likely to be used to pay benefits for someone in Maryland, Tennessee or any other state." *Id*. at 25–26.

In reply, defendants argue that "if contributions are owed to the funds on behalf of the disputed employees, then that necessarily means that those employees are bargaining unit employees covered by a labor contract, which governs nearly all of their working conditions." ECF 14 at 12. Therefore, they assert that Arkansas would have an interest in the determination of whether its residents are covered by a collective bargaining agreement. *Id.*

As defendants argue, all of the employees who would receive the benefits of the Bargaining Agreement are located in Arkansas. Thus, there is merit to defendants' argument that Arkansas has an interest in the determination of whether defendants' employees, Arkansas residents, receive the benefits of a collective bargaining agreement. Moreover, the payroll and work performance records are likely to be located in Arkansas. And, the prospect of a speedier resolution in Arkansas carries some weight in favor of transfer. But, above all, one judge overseeing the entire case, which involves the same defendants, the same bargaining agreements, and the same audits, compels the conclusion in favor of transfer.

## IV. Conclusion

The IUPAT Plaintiffs have established proper venue in Maryland. That is the venue of their choice. In contrast, venue is not proper in Maryland as to the SP Plaintiffs.

Under 28 U.S.C. § 1406(a), the Court "shall" either dismiss the claims as to the SP Plaintiffs "or if it be in the interest of justice, transfer [those claims] to any district or division in

which it could have been brought." *See Williams v. Louisiana Comm. on Bar Admissions*, No. CV 22-1006-SDD-SDJ, 2023 WL 4100495, at *4 (M.D. La. May 12, 2023), *report and recommendation adopted*, CV 22-1006-SDD-SDJ, 2023 WL 4098634 (M.D. La. June 20, 2023). I see no reason to dismiss the case as to the SP Plaintiffs.   Rather, the interests of justice, convenience, and efficiency weigh in favor of a transfer of the entire case.   And, between Tennessee and Arkansas, for the reasons stated, the transfer must be to the Eastern District of Arkansas.

An Order follows, consistent with this Memorandum Opinion.


Date:  March 24, 2025                                    _____/s/_____

                                                        Ellen Lipton Hollander
                                                        United States District Judge

**Appendix A**

**Glossary of Terms**

| Entity | Abbreviation |
|---|---|
| International Union of Painters and Allied Trades | Union or IUPAT |
| International Painters and Allied Trades Industry Pension Fund | Pension Fund or IUPAT Pension Fund |
| International Painters and Allied Trades Annuity Plan | Annuity Plan or IUPAT Annuity Plan |
| Finishing Trades Institute | FTI |
| Pension Fund + Annuity Plan + FTI | IUPAT Plaintiffs |
| Political Action Together Fund (including Political Action Together Legislative and Educational Committee and Political Action Together Political Committee), an unincorporated associated or fund established by Union | PAT Fund |
| Labor Management Cooperation Initiative, a joint labor and management initiative and unincorporated organization | LMCI |
| PAT Fund + LMCI | IUPAT Bargained Entities |
| IUPAT ERISA Plaintiffs + IUPAT Bargained Entities + Williams | IUPAT Funds |
| Southern Painters Welfare Fund | Welfare Fund |
| Finishing Trades Institute of The International Union of Painters and Allied Trades District Council 10 | FTI Council 10 |
| FTI of DC10 + Welfare Fund | SP Plaintiffs |
| International Union of Painters and Allied Trades Local Union 49 and Local Union 424 | SP Bargained Entities |
| SP Plaintiffs + Canning + Wohl | SP Funds |
| IUPAT Funds + SP Funds | Funds |
| McCormick Painting Company, Inc. | McCormick Painting |
| McCormick Industrial Abatement Services, Inc. | McCormick Abatement |
| McCormick Painting + McCormick Abatement | Companies |
| National Labor Relations Act | NLRA |
| Labor Management Relations Act | LMRA |